```
                                                          FILED
                                                        APR 2 3 2008
        UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF COLUMBIA              NANCY MAYER WHITTINGTON, CLERK
                                                      U.S. DISTRICT COURT
```

| UNITED STATES OF AMERICA | : | Criminal No. 08-19 (RJL) |
|---|---|---|
| v. | : | |
| DORA ROMERO MORALES, | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **DORA ROMERO MORALES** ("**MORALES**") and the United States agree and stipulate as follows:

1. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The District of Columbia Department of Motor Vehicles ("DMV") has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity ( i.e., name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

2. Applicants for driver's licenses must pass the following three tests: vision screening,

knowledge and street sign recognition and skills road. Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test. Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

3. On January 16, 2008, defendant **MORALES** drove into the District of Columbia from her residence in the Commonwealth of Virginia with the intention of purchasing a fraudulent D.C. driver's license, an item of value that authorizes an individual to drive and serves as a photographic identification card.

4. Having twice failed the knowledge test administered by the Virginia Department of Motor Vehicles, and, therefore, unable to obtain a valid driver's license from the State where she resides, defendant **MORALES** learned from a friend (hereinafter referred to as "RG") that she could obtain a D.C. driver's license without passing the knowledge or road skills tests in exchange for $1,500. RG himself had previously obtained a D.C. driver's license in such a manner. RG further informed defendant **MORALES** that the license she would obtain would not expire until 2012, even though her work permit was scheduled to expire in 2009. RG then gave defendant **MORALES** the telephone number for the woman (hereinafter referred to as "GP") who facilitated the procurement of his fraudulent D.C. driver's license.

5. On January 15, 2008, defendant **MORALES** spoke to GP by telephone. GP instructed defendant **MORALES** to meet her the following day, at approximately 11:00 a.m., on Columbia Road, N.W., between 14th and 15th Streets.

6. On January 16, 2008, defendant **MORALES** drove her husband's 1992 gray Toyota Corolla from her home in Virginia to the 1400 block of Columbia Road, N.W. GP

arrived in a Nissan Quest minivan and instructed defendant **MORALES** to follow her to DMV's Georgetown branch. Since defendant **MORALES** was unfamiliar with the streets in the District, RG's wife (hereinafter referred to as "SP") agreed to assist defendant **MORALES** by driving. At approximately 12:00 p.m., GP parked the minivan on the westbound side of M Street, N.W. in front of the Lucky Brand Jeans store. SP parked defendant **MORALES'** car directly behind her. SP wrote her D.C. address on a piece of paper and handed it to defendant **MORALES** who intended to use SP's address on the D.C. driver's license she sought to obtain. Then, defendant **MORALES** exited the passenger seat of her car and got into GP's minivan. Defendant **MORALES** handed GP 15 $100 bills for a total of $1,500.

7. Immediately thereafter, defendant **MORALES** exited the minivan with GP's teenage daughter whom defendant **MORALES** followed into the Georgetown Park Mall. GP's teenage daughter showed defendant **MORALES** where to go by pointing at window number three where DMV employee PG was sitting. GP's teenage daughter told defendant **MORALES** that this woman spoke Spanish and would assist her. After sitting briefly inside the DMV, DMV employee PG called to defendant **MORALES** in Spanish. Defendant **MORALES** approached window three and handed DMV employee PG her Virginia Identification Card, Employment Authorization Card, reflecting an expiration date in March 2009, and the piece of paper on which SP had written her D.C. address. Defendant **MORALES** did not complete an application and did not take the required vision, knowledge and road skills tests. After she tendered her credit card to DMV employee PG as payment of the $39 fee, defendant **MORALES** took the receipt of payment to another DMV employee who took defendant **MORALES's**

3

photograph. Several minutes later, defendant **MORALES** was handed a facially valid D.C. driver's license with an expiration date of March 9, 2012.

                                                                             _____
                                                               **DORA ROMERO MORALES**, Defendant